HENRY D. McHENRY, Plaintiff in Error, v. ELIHU A. SHEPHARD et al., Defendants in Error. (Two cases, same parties.)

June 10, 1876.

1. A statement, filed in the Circuit Court, which declares that A had made and delivered his negotiable promissory note, promising to pay to the cognizor, six months after date, $8,750, for value received, etc., which was indorsed by the cognizor, and B, C, D, and E, and then held by F, and which was protested for non-payment, and was due and unpaid, is not sufficient, under sections 21, 22, Article 11, Wagner's Statutes, 1055, to warrant the court in rendering judgment against the cognizor by confession.

2. The other creditors of the cognizor have an interest in knowing whether the note, in its origin, was business or accommodation paper; whether it was indorsed by the cognizor for value or for accommodation; whether it was indorsed before or after maturity, whether due notice of its dishonor was given by the holder, and upon what terms the holder took it. A statement which is silent on all these heads is not a compliance with the letter or spirit of the statute.

ERROR to St. Louis Circuit Court.

*Affirmed.*

*Samuel Reber* and *William F. Causey*, for plaintiff in error, cited: Mann v. Brooks, 7 How. Pr. 450; 7 How. Pr. 460; Gilman v. Hovey et al., 26 Mo. 280; Bryan v. Mitchell, 28 Mo. 32; How v. Dorsheimer, 31 Mo. 349; Whitney v. Kenyon, 7 How. Pr. 460; Gen. Stat. 682, secs. 21, 22, and 24; Horton v. Bayne, 52 Mo. 531; Corby, Exrx., v. Butler, 55 Mo. 398; Chitty on Bills, 637; Farr v. Woods, 2 M. & W. 844; Merrick v. Phillips, 58

Mo. 436; Bennet v. Torlina, 56 Mo. 309; Gaudal v. Finn, 23 Barb. 652; Dunham v. Waterman, 17 N. Y. 9; Whitney v. Kenyon, 16 Johns. 149; Acker v. Acker, 1 N. Y. Ct. of App. 1; Clement v. Gerow, 1 N. Y. Ct. of App. 370.

*Dryden & Dryden* and *G. S. Van Wagoner*, for defendants in error, cited: Wag. Stat. 1055, sec. 22; Waites' Am. Code, 727, sec. 383; Chappel v. Chappel, 12 N. Y. 215; Dunham v. Waterman, 17 N. Y. 9; Frost v. Koon, 30 N. Y. 440; Gundal v. Finn, 23 Barb. 652; Purdy v. Upton, 10 How. Pr. 494; Gilman v. Hovey, 26 Mo. 288; Bryan v. Miller, 28 Mo. 32; How v. Dorsheimer, 31 Mo. 350; Edgar v. Greer, 7 Clark, 136; Bernard v. Douglass, 10 Iowa, 370; Freem. on Judg., secs. 543, 558; Nichols v. Kribs, 10 Wis. 76; Thompson v. Hintgen, 11 Wis. 112; Wag. Stat. 1062, sec. 26; Downing v. Still, 43 Mo. 316; Harkness v. Austin, 36 Mo. 47; Harbor v. Pacific R. R. Co., 32 Mo. 426; Wag. Stat. 216, sec. 11; Farrell v. Fritschle, 30 Mo. 190; Bonnell v. Henry, 13 How. 144; Bernard v. Douglass, 10 Iowa, 370; Wag. Stat. 790, sec. 3.

GANTT, P. J., delivered the opinion of the court.

These two cases may be considered together. In the latter a stipulation is filed that the determination of the first shall be decisive of the second.

On May 5, 1875, there was filed in the Circuit Court of St. Louis county a statement reciting that, whereas, on October 22, 1874, D. Robert Barclay had made and delivered (it is not said to whom) his negotiable promissory note, of that date, promising to pay, six months after date, to the order of Elihu H. Shephard $8,750, for value received, with 10 per cent. interest, which note was indorsed by said Shepard, Stilson Hutchins, Henry W. Williams, Theophile Papin, Trusten Polk, and Wm. H. McHenry, and was then held by McHenry, and that said note was due and unpaid, and had been protested for non-payment; therefore, Elihu H. Shepard, payee and first indorser, authorized

and requested the St. Louis Circuit Court to enter up a judgment against him for the full amount of the principal and interest of said note, with costs of protest and damages, in favor of McHenry, the holder, at the April term, 1875, or any subsequent term, of the St. Louis Circuit Court. This statement was signed and sealed by Shepard, and verified by his affidavit, on May 4, 1875, before Charles E. Bradley, notary public. Whereupon, McHenry, appearing by his attorney, and moving the court thereto, it was considered by the court that McHenry do recover of Shephard the debt aforesaid, as confessed, and also his costs and charges, etc. In this entry were recited the following facts :

1. That it appeared to the court that E. H. Shepard was indebted to the said McHenry in the sum of $9,582.29, and for that amount confessed judgment and authorized the entering up of the same.

2. That the indebtedness is founded on a negotiable promissory note, etc., which note was made by D. R. Barclay, and indorsed by Shephard, the payee, and also by Hutchins, Williams, Papin, Polk, and McHenry, and was held by McHenry.

3. That the court was satisfied "that the same is justly due, and that defendant executed the statement in writing, made affidavit thereto, as required by law, and that defendant is the same identical person who made said statement and affidavit."

On October 26, 1875, the National Bank of the State of Missouri filed a motion to set aside said judgment, on the ground that the same was irregular and void, because the amounts, averments, and statements contained in the statement were not in compliance with the statute; that the statement did not state concisely the facts out of which it arose; did not show that the sum confessed was justly due, or to become due, as required by the statute; and that, on April 19, 1875, a judgment was obtained in the St. Louis Circuit Court, in favor of the mover and against Shepard,

for $16,619.98, which remains unsatisfied; that execution issued thereon had been levied on certain real estate of Shepard to satisfy the same; that McHenry had also sued out execution on his judgment, and caused it to be levied on the same property; and that he had caused the property to be advertised for sale thereunder, on October 27, 1875, and October 30, 1875, "and is advertising his said judgment and claiming his execution levies to be valid and of full force and effect, and superior in point of time, and as to its lien, to the judgment and execution levies of your petitioner" (the National Bank of the State of Missouri). Whereupon the bank prayed that the judgment in favor of McHenry be set aside and the execution recalled, etc.

This motion came on to be heard on October 26, 1875 (it may be stated that the record in this case is very carelessly transcribed, and abounds in blunders of the most palpable nature), and the entry of the judgment then rendered shows that the motion was filed on October 15, 1875 (it had been previously alleged to have been filed October 26, 1875); that, on October 26, 1875, the parties—that is to say, the bank and McHenry—presented their proofs, and thereupon the court found that the facts stated in the motion are true, and that the movers are subsequent judgment creditors of Shepard, and that McHenry's judgment is irregular and should be set aside; and it was done accordingly, and the execution recalled.

By the bill of exceptions it appeared that the movers put in evidence the record of a judgment obtained on April 19, 1875, by the *National Bank of the State of Missouri* v. *Shepard* et al., for $16,619.98,· on which an execution issued on October 22, 1875; also, the record in the case of *McHenry* v. *Shepard*, and an execution issued thereon, October 2, 1875; also, a motion to set aside the order of the court on October 26, 1875, sustaining the motion to set aside the judgment confessed, with a saving of all exceptions, etc. There was an appeal to the general term, an

affirmance *pro forma*, and the case comes before us on writ of error.

1. The point before us is, not the validity of a judgment confessed by the party in open court in person or by virtue of a warrant of attorney, according to the practice which was in this State familiar to the profession prior to 1849, but of a judgment taken under the provisions of our statute, borrowed in that year from the New York Legislature, and substantially continued to the present time. It is well known that the principal object proposed by the advocates of the new code of practice was the simplification of legal proceedings. This purpose was professed, and there is no doubt that it was sincerely entertained. The numerous cases cited by the industry of counsel, in which the attempt on the part of creditors to avail themselves of the compendious and untechnical methods supposed to be furnished by the code for securing their demands by judgment, illustrate, for the thousandth time, the doubtful wisdom of innovating upon a course of practice confirmed by the most careful reflection of generations of learned and painstaking men.

The requirements of the statute are somewhat stringent. As they were in force when this statement was filed, they are conveyed in the following terms :

" Section 21. A judgment by confession may be entered without action either for money due or to become due, or to secure any person against contingent liability on behalf of defendant, or both, in the manner herein prescribed.

" Section 22. A statement in writing must be made, signed by the defendant, and verified by like affidavit, as in case of an answer, to the following effect: First, it must state the amount for which the judgment may be rendered, and authorize the entry of judgment therein; second, if it be for money due or to become due, it must state concisely, *and show*, the facts out of which it arose, and must show that the sum confessed therefor is justly due or to become due ; third, if it be for the purpose of securing the plaintiff

against a contingent liability, it must state concisely the facts constituting the liability, and must show that the sum confessed does not exceed the same.

"Section 23. Such statement and affidavit shall be filed, and the court shall render judgment for the amount confessed and cause the same to be entered upon the records, first being satisfied of the identity of the defendant, if present; or, if he be not present, that he executed the same [what is 'the same?'], and made the affidavit hereinbefore required."

These three sections are nearly identical with the 1st, 2d, and 3d sections of Article 22 of the Practice Act of 1849 (Session Acts, p. 91). They are taken almost *verbatim* from the code of New York.

There have been many instances in which the validity of judgments confessed under these provisions has been judicially examined in New York, and three of such instances in Missouri have been brought to our attention.

We consider it plain that the object of the provisions we have quoted was to secure, in the statement of the facts out of which a debt to be secured by confession of judgment arises, a much more minute and elementary detail than would suffice in a declaration. A proceeding between A and B, who appear as litigants, postulates a controversy and contending parties. When B comes into court voluntarily to confess an indebtedness to A, and to secure it by judgment, there is room for collusion and preference. The law does not forbid preferences absolutely and without qualification, because obedience to such an order would be what it could not, in the nature of things, enforce; but it regards preferences with jealousy, and insists upon their not being fraudulent. In order that they may not be tainted with fraud, it refuses the aid of legal process to effect a preference unless very rigid precautions are observed against the admission of fraud. It does not suffice that fraud, if proved, will vitiate the transaction. This is a rule

which governs all dealings between man and man. Both when the forms and machinery of law are made use of to effect a preference, by giving to a particular creditor a judgment at an earlier day than that at which the other creditors of the party can put their demands—perhaps equally meritorious from every point of view, and certainly of equal validity in the eye of the law—in the same advantageous position, the statute law of Missouri demands a compliance with certain requirements, aimed at the fullest disclosure to all concerned, of the good faith of the proceeding, if it be really honest, or, if it be otherwise, of the particular theory by means of which a fraud is projected. There is no toleration of concealment or disguise. The whole business must be laid bare, so that all concerned may see and judge it. Such seems to be the intention of the New York code, for which may be consulted pages 389, 390 of Voorhies' Third Edition and Supplement, chapter 3, section 383. It is to be observed that this provision, which was adopted in New York in 1848, was a material relaxation of the stringency of the rule prescribed by the act of 1818, construed by the case of *Lawless* v. *Hackett*, 16 Johns. 149. But up to this time we had in Missouri no statutory regulation at all approaching either of these in strictness. In 1849, however, we adopted the New York statute bodily. The act of 1865, which prevails to this day, attempts the same thing, and succeeds except for the clerical error committed by the transcriber of that day. The section of the New York statute has been the subject of frequent discussion by the courts of that state; and we have examined the cases referred to by counsel on both sides: *Chappel* v. *Chappel*, 12 N. Y. 215 (decided in 1855); *Dunham* v. *Waterman*, 17 N. Y. 9 (1858); *Lanning* v. *Carpenter*, 20 N. Y. 447 (1859); *Freligh* v. *Brink*, 22 N. Y. 418 (1860); *Neusbaum* v. *Keim*, 24 N. Y. 325 (1862); *Acker* v. *Acker*, 1 Keyes, 291; *Clement* v. *Gerow*, Ib. 297; and *Gandell* v. *Finn*, Ib. 217—all decided in 1864—and *Union Bank* v.

*Bush*, 36 N. Y. 631, decided in 1867. Our own Supreme Court adopted the two first of these decisions, which were all that had been brought to their notice up to 28th Mo. ; the three decisions of our court to which we are referred being *Gilman* v. *Hovey* et al., 26 Mo. 280 ; *Bryan* v. *Miller*, 28 Mo. 32 ; and *How* v. *Dorsheimer*, 31 Mo. 349. We are, indeed, referred to an earlier decision of the Supreme Court (corresponding to our Circuit Court) of New York, at the Saratoga special term, February, 1853, reported in 7 How. Pr. 449 *et seq. (Mann* et al. v. *Brooks);* but we do not think this case as deserving of attention as the decisions of the Court of Appeals twice made—not to speak of the rulings of our own Supreme Court, which are supreme authority for us.

No case to which we are referred (except, possibly, that reported in 7 How. Pr. Rep.), either in New York or Missouri, goes to the length of upholding the statement made in the case at bar as sufficient to authorize a judgment by confession. The consideration of the note executed by Barclay does not appear. It is not even alleged to have been valuable—for this can scarcely be inferred from the recital in the note that it was "for value received." It does not appear why Shepard indorsed the note to Hutchins. It may have legitimately been an accommodation indorsement, or an indorsement for value ; but the two are not for all legal purposes equivalent, and creditors have a right to be told which of them it was. This statement tells them nothing. Whether the note was held by McHenry for value before maturity is a very material fact ; but on this point the statement is silent. Stress is laid, by counsel for appellants, on the fact that McHenry is not the payee, but the indorsee, of the note. We do not see that this circumstance, without more, gives him an advantage over the payee. If he were the *bona fide* indorsee for value before maturity of negotiable paper, he would be safe from several defenses which may be set up as between maker and

payee. But this character should appear, at least in statement, before the court will be at liberty to invest him with its privileges.

We are, then, of opinion that, according to the views expressed by the Supreme Court of Missouri in *Bryan* v. *Miller*, 28 Mo. 32, and *How* v. *Dorsheimer*, 31 Mo. 349, the statement on which the judgment was confessed in this case is materially defective, and the judgment should be set aside at the suggestion, and on motion, of any subsequent or cotemporaneous judgment creditor—any judgment creditor, in fact, whose security is impaired by it. It only remains for us to inquire whether the parties moving in these two cases come within this description.

In the first, No. 220, the motion is made by the National Bank of the State of Missouri, and it declares that, on April 19, 1875, it had obtained a judgment against Shepard and Barclay for $16,619.98. On this account, and because McHenry had gained the advantage of an earlier execution and levy in another county (though the last circumstance is very obscurely referred to), the bank asks that the judgment confessed in McHenry's favor, on May 5, 1875, be set aside—vitiated as it is by the imperfection of the statement. The court, considering this motion, finds that the bank is a "subsequent judgment creditor" to McHenry, and set aside the judgment accordingly. This finding is, of course, an inadvertence. The judgment of the bank was prior in point of time. The lien of the two judgments commenced, as between the Bank and McHenry, on the last day of the April term, during which both were given. They were cotemporaneous, therefore, for the purpose of the security resulting from their rendering. But the case is fully within the reason and principle of those cited from the Missouri decisions; there is no doubt of the facts; and the judgment of the Circuit Court must be affirmed.

In No. 241 the party moving *is* a subsequent judgment creditor, who became such at the term following that when

the judgment in favor of McHenry was confessed. Besides, there is an agreement of counsel filed in the cause that the decision in No. 220 shall govern this in 241. Such is also the necessary result of the facts shown by the record.

The judgment will, therefore, be affirmed. All the judges concur.